*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NOS. 2013-052 & 2013-053

JULY TERM, 2013

| | |
|---|---|
| In re M.A., Juvenile } | APPEALED FROM: |
| } | |
| } | Superior Court, Windsor Unit, |
| } | Family Division |
| } | |
| } | DOCKET NO. 31-4-12 Wrjv |
| | |
| | Trial Judge: Katherine A. Hayes |
| | |
| In re J.A., Juvenile } | |
| } | |
| } | |
| } | DOCKET NO. 32-4-12 Wrjv |

In the above-entitled cause, the Clerk will enter:

The parents of J.A., a daughter born in September 2003, and M.A., a son born in September 2005, appeal a disposition order of the superior court, family division, transferring custody of the children to the Department for Children and Families (DCF). We affirm.

DCF became involved with the family in the fall of 2011 based on reports of sexualized and aggressive behavior by the children. A coordinated planning process was implemented to provide services in support of the family, to address the children's mental health needs, and to assess the children's behaviors. On April 3, 2012, DCF filed a petition alleging that the children were in need of care and supervision (CHINS). The following day, the court allowed the children to remain in their parents' custody subject to a conditional custody order (CCO). On April 23, 2012, the parents stipulated to the CHINS determination. They acknowledged that the children exhibited sexualized and aggressive behaviors and had special needs. They also acknowledged that they had been at odds with the school concerning the treatment of the children and had blocked the school from accessing information from treatment providers.

In May 2012, the State moved for, and the parents agreed to, amendments of the CCO that: (1) gave DCF custody of M.A. so that he could be assessed at a particular facility; and (2) required the parents to cooperate with J.A.'s placement at another facility. The court approved those amendments to the CCO. At a status conference in August 2012, the parents agreed to M.A.'s continued custody with DCF because his assessment had not been completed. At the same time, the parents voluntarily placed J.A. at the Abigail Rockwell Children's Center (ARCC) for assessment.

In October 2012, DCF filed a disposition case plan that called for M.A. to remain in DCF custody. On December 11, 2012, DCF filed a disposition case plan that called for J.A. to remain in the custody of the parents subject to conditions requiring the parents, among other things: (1) to sign releases to allow DCF to communicate with service providers, and (2) to follow all treatment, service, and behavioral recommendations offered by J.A.'s treatment providers.

At a December 17, 2012 status conference, the court continued J.A.'s CCO but expressed concerns over the apparent difficulty in finding appropriate residential treatment for J.A. According to the participants at the conference, funding for ARCC was expiring and J.A. required a substitute treatment program. ARCC recommended residential treatment or outpatient wrap-around services. The court perceived the parties as generally agreeing to J.A.'s need for intensive treatment, and the court expressed frustration over the lack of readily available treatment alternatives absent DCF custody. The court invited the parties to talk about stipulating to limited DCF custody for the purpose of securing treatment.

At the end of the status conference, father inquired if J.A. could come "home for the holiday." The court confirmed that it appeared that the daughter was going home and reiterated that nothing in the CCO prohibited returning her home. The DCF worker reported that father had just asked for some safety planning before picking his daughter up, to which the court commented: "good idea." The following day, the parents discharged J.A. from ARCC and took her home. Believing that the parents' action was premature, DCF sought and obtained custody and returned her to ARCC.

A contested disposition hearing was held over two days, January 8-9, 2013. At the conclusion of the hearing, the superior court granted legal custody of the children to DCF with a case plan goal of reunification with the parents. See 33 V.S.A. § 5318(a)(4) (allowing court at disposition to make orders related to legal custody of children having been adjudicated CHINS, including transferring custody to DCF). The court approved M.A.'s disposition plan and required DCF to submit a revised disposition plan for J.A. In support of its order, the court found that the children had "extraordinary" needs, that the parents had downplayed the children's bizarre sexualized behavior, and that they had engaged in a pattern of not fully cooperating with service providers. The court concluded the parents' actions had delayed and interfered with DCF's ability to provide the children with all of the services they need. The court further concluded that the parents' behavior toward each other had directly contributed to the children's dysfunction. Given these circumstances, the court determined that the parents should address their own mental health needs so that they can prepare for reunification while DCF makes legal custodial decisions addressing how to best assess and address the children's extraordinary needs.

The parents appeal, arguing that the evidence does not support the court's decision to transfer custody of the children to DCF. They argue that they have always been supportive of M.A. being assessed at the facility where he was receiving treatment and that they had cooperated with providers at ARCC since being ordered to do so by the court. They also point out that the court had acknowledged at the December 17 status conference that they could discharge J.A. from ARCC at any time thereafter. Finally, they argue that the court's reliance on the parents' conduct as contributing to the children's dysfunction is irrelevant to the issue of legal custody because DCF's disposition plan was not going to call for the children to return to the parents' home until after the parents had received further services. The children's attorney has filed a statement indicating that they support the court's disposition order placing legal custody with DCF.

Upon review of the record, we conclude that the evidence at the disposition hearing amply supports the superior court's custody decision. An ARCC therapist testified about the parents' excessive contact with the facility, their at-times hostile attitude toward service providers, and their intentional disregard of program recommendations. Another witness testified about the parents' general resistance to recommendations by J.A.'s school concerning her treatment. The witness described the difficulty in obtaining information from other providers because of the parents' lack of cooperation and refusal to sign releases. She noted that the school offered to pay for a psycho-sexual evaluation of J.A., but the parents refused. DCF's social worker testified about the parents' dysfunctional relationship and their resistance to participate in psychological evaluations at DCF's expense to address their own issues. She further testified that it was important for the children to remain in DCF custody so that DCF could set limits on the parents' interaction with service providers. Significantly, the court found the parents, and in particular the father, failed to recognize the abnormal sexual conduct of the children and posited that this pattern of denial played a role in the children's lack of care. All of this testimony supported the court's determination that, given the children's extraordinary needs and the parents' interfering conduct, DCF should be given legal custody to assure that the children receive the services they need. None of the parents' counterarguments demonstrate that the record lacks evidence to support the court's custody determination at disposition. In re L.R.R., 143 Vt. 560, 562 (1983) (stating that trial court's discretionary ruling in disposition order will stand on appeal absent showing that court abused its discretion).

We recognize that the parents' actions in taking J.A. from ARCC were part of the court's reasoning for transferring legal custody to DCF, and that parents point out that at the December 2012 status conference the court and the DCF social worker agreed, if not acquiesced, that J.A. could return home under the current order. It is not clear from the record that the parents intended to take the child home immediately and whether safety planning was to be completed before her return. It was, however, clear from the record that the court's primary concern was that the child be enrolled in treatment services. In any event, although the court acknowledged the parents' legal authority to take J.A. home at that time, this did not preclude the court from later opining that their decision to do so was not in J.A.'s best interest and weighed against them retaining legal custody of their children.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice